IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

KESHEANNA JACKSON                                           PLAINTIFF

v.                              No. 2:14-cv-125-DPM

NORAC, INC.,
d/b/a Norac Additives                                       DEFENDANT

### ORDER

**1. Introduction.** Kesheanna Jackson worked for nearly a decade in the
front office of the Norac plant in Helena.  Norac makes chemicals that are
added to plastic products — basically the ingredients for plastic.  Forty-
something folks work at the Helena plant.  This case mostly turns on
Jackson's interactions with six people, many of whom worked in the front
office too:

- Len Walp:  the plant supervisor;

- Kathy Thomas:  Jackson's immediate boss;

- Johnny McKenzie:  the plant engineer;

- Wendy Fletcher and Danielle Rose: Jackson's office co-workers; and

- Melvin Jenkins:  a plant employee.

Jackson alleges that since August 2013, she's been cursed at, denied a transfer,
shown dirty pictures, and falsely blamed for a co-worker's firing. She claims

that all this, plus general bad treatment by her bosses, was racial and sexual harassment in the form of a hostile work environment. She also alleges that Norac axed her job during a reduction in force because she filed an EEOC charge and this lawsuit. Norac moves for summary judgment, contending that what happened was just workplace friction and a legitimate job cut.

**2. Facts.** These are the undisputed facts and, where disputed, the facts in the light most favorable to Jackson. *Anda v. Wickes Furniture Company*, 517 F.3d 526, 531 (8th Cir. 2008). Norac hired Jackson in 2005. She started in document control. She later moved to the ISO department, where she handled most of the daily work on ISO compliance. (ISO stands for International Standard of Operation. It's an organization that accredits companies' quality control systems.)

Jackson alleges some specific instances of harassment. One Friday in December 2013, there was a snow storm. Plant supervisor Len Walp called and said everyone could go home. After some employees left, a small group stayed to close up: Jackson, her boss Kathy Thomas, plant engineer Johnny McKenzie, and a few others. Then Thomas left while Jackson was trying to set the outer office system so everyone could leave. When Jackson had

-2-

problems with the system, McKenzie told her something like: "Why don't you just get the hell out of here." № 26-3 at 102. Someone caught Thomas, who came back to fix the problem. But Thomas then let everyone else leave before Jackson. (McKenzie later apologized for not sticking up for Jackson.) Jackson burst into tears.

Later in December 2013, plant worker Melvin Jenkins showed Jackson a picture of himself naked. № 26-3 at 27. Jackson told Jenkins's boss, the production manager, who took care of it. № 26-3 at 30. Jenkins didn't come talk to Jackson after that, but he'd stare at her when they passed in the mornings.

Another incident happened in early 2014. After months of conflict between Jackson and her boss, Thomas was fired. The front office crew came to believe Jackson caused Thomas's firing, and Jackson says that put her "under fire every day." № 26-3 at 81.

There were other things over the years. At some point, Jenkins handed Jackson a penis ring and asked her what it was. (She was shocked, but didn't report it; and the next week Jenkins went to jail. № 26-3 at 28–29.) In 2012, an accounts-payable spot opened up, and Jackson wanted it. But Norac hired

-3-

an outside person, Danielle Rose, instead. (The position would have been a lateral move for Jackson, not a step up. № 26-2 at 24–25, 27–28.) Thomas wrote a February 2013 memo to Jackson about errors on an order. № 26-7. A white co-worker with errors wasn't cautioned. № 26-3 at 125–26. Walp wrote a May 2013 memo to Jackson saying that her co-workers were complaining about her failure to cooperate with others. № 26-8. One time Jackson was picked on for her space heater and someone asked her to turn it off. № 26-3 at 114. And Walp edited Jackson's draft response to a 2014 ISO audit that found several violations. № 26-3 at 120. Walp in general was quick to blame Jackson for things she didn't do. № 26-3 at 150–51. All this, Jackson says, was harassment. № 26-3 at 123, 125–26, 141.

Eventually, in April 2014, Jackson filed an EEOC charge. № 26-3 at 24. She continued working at Norac. And over the summer, she repeatedly told Norac that she loved her job. № 33 at 7. Then, in August 2014, Jackson took medical leave. She needed it, she says, because of stress at work. Jackson got her right-to-sue letter from the EEOC while on leave. She filed this suit in October 2014. Two months later, while Jackson was still on leave, she was laid off as part of a reduction in force. Two other employees were laid off too:

-4-

Rose and Valerie Lacey. Norac reduced its Helena workforce because some of the jobs performed in Helena were transferred back to another Norac plant in California.

**3. Harassment.** Jackson must show that Norac harassed her because of her race or sex and that the harassment affected a term, condition, or privilege of her job. *Singletary v. Missouri Department of Corrections*, 423 F.3d 886, 892 (8th Cir. 2005).

- **Sexual Harassment**

This claim fails. It's based on the incidents with plant worker Melvin Jenkins involving the penis ring and the nude picture. № *26-3 at 32*. But there's no evidence that Norac knew about the first incident — and Jackson didn't report it. № *26-3 at 28–29*. Jackson did report the nude picture to plant manager Reed, and he took care of it. № *26-3 at 30*. So there's no evidence that Norac "knew about the harassment and failed to take prompt and effective remedial action." *Carter v. Chrysler Corporation*, 173 F.3d 693, 700 (8th Cir. 1999). Jenkins's leering at Jackson doesn't support liability either: there's no evidence that Jackson reported these stares, or found them unnerving enough to report.

-5-

- **Racial Harassment**

This claim fails too. First, Jackson has shown an environment marked by rude and unpleasant conduct, not one poisoned by and "permeated with discriminatory intimidation, ridicule, and insult." *Carpenter v. Con-Way Central Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007). The unfriendly attitude from her supervisors, the negative memos, the "get the hell out of here" comment on the snow day, being denied the accounts payable position, being asked to turn off her space heater, and having her report edited by Walp—these things didn't create an objectively hostile environment. They were sporadic, not constant; some of them were offensive, but none was physically threatening or humiliating; and they don't appear to have unreasonably interfered with Jackson's work. *Singletary*, 423 F.3d at 892–93. Jackson's situation at Norac resembles other frustrating work situations held not to violate Title VII. *O'Brien v. Department of Agriculture*, 532 F.3d 805, 809–10 (8th Cir. 2008). It's true that an environment's hostility can't be measured by discrete incidents alone—the sum is important. *Carter*, 173 F.3d at 702. But even in combination, Jackson's workplace experiences fall short of a racially hostile environment.

-6-

Second, Jackson hasn't shown that the alleged harassment was motivated by her race. *Carter*, 173 F.3d at 700. She has no evidence that the "get the hell out of here" comment was racially motivated. № *26-3 at 104*. Her evidence that Walp's May 2013 memo was racially motivated is her being "the only black girl in the office." № *26-3 at 124*. But Norac hired other black employees in 2013 and 2014. № *26-3 at 124–25*. Jackson comes closest to supporting a racial motivation in saying that Kathy Thomas disciplined her for things that two white office employees (Fletcher and Rose) got away with. № *26-3 at 126*. But Jackson offers only speculation to support this claim. She doesn't say how she knows Rose wasn't disciplined. And her only basis for believing that Fletcher wasn't disciplined is her assumption that Fletcher would have told her about it. № *26-3 at 127*. This speculation isn't enough to get past summary judgment. *Anda*, 517 F.3d at 531. On top of that, Thomas is the one who hired Jackson. № *26-3 at 125*.

**4. Retaliation.** Jackson's retaliation claim arises under the Arkansas Civil Rights Act, not Title VII. But the two statutes are analyzed the same way. *Hill v. City of Pine Bluff, Arkansas*, 696 F.3d 709, 716 (8th Cir. 2012). Jackson's retaliation claim also fails as a matter of law.

Jackson filed an EEOC charge in April 2014. Norac decided to cut its Helena force in September 2014. Jackson filed this suit in October 2014. And she was let go in December 2014 as part of the staff reduction. Jackson acknowledges that she has no evidence that she was included in the reduction because of her EEOC charge or her lawsuit. № 26-3 at 84. But she also contends that being laid off was a natural continuation of the past harassment. № 26-3 at 80.

Even assuming that Jackson has made a *prima facie* case of retaliation, she hasn't shown that Norac's legitimate reason for laying her off was a pretext for the retaliation. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). Norac says it decided to eliminate some jobs in Helena in September 2014, when it discovered an opportunity to transfer some duties back to California where it had wanted them all along. № 26-1 at 67–68 & 26-5 at 16. Norac looked at several things when deciding how to reduce the Helena force: the job functions moving to California; who was performing those functions; seniority; and the overall workload in Helena. № 26-1 at 69. Walp was asked if he could identify three people to eliminate; he told Norac the three non-supervisory positions with the lowest seniority. № 26-2 at 65, 70.

-8-

Valerie Lacey, a black female, was laid off. Her purchasing and human-resources duties were transferred. № 26-1 at 70. Danielle Rose, a white female, was laid off too. Her accounts receivable and accounts payable duties were transferred. *Ibid.* Norac says it laid Jackson off because her non-ISO duties went to California, and her ISO duties alone didn't justify a full-time position. *Ibid.* Those duties were given to Helena plant engineer McKenzie. № 26-1 at 70–71.

Jackson hasn't shown that Norac's explanation for her layoff lacks a factual basis. *Gibson,* 776 F.3d at 540. She notes slight disharmony between the explanations given by Norac president Michael Connor (the decision was based on functions, not people) and plant supervisor Walp (it was people, not positions). But this doesn't call into question the underlying point: Norac decided to move some administrative duties from Helena to California and therefore didn't need as many folks in Helena. Nor has Jackson shown that a prohibited reason more likely than not motivated Norac's decision. *Gibson,* 776 F.3d at 540. Norac kept Jackson on for six months after finding out about her EEOC charge. During that half-year, the company granted Jackson four months of medical leave, from August through December. № 26-3 at 49. It

laid off two other employees, one of whom was black, and neither of whom (as far as this record discloses) filed an EEOC charge or a lawsuit against Norac. № 26-3 at 86. Norac offered Jackson severance pay. № 26-3 at 95. This record could not lead a reasonable fact finder to return a verdict for Jackson. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

*   *   *

Norac's motion for summary judgment, № 26, is granted. Jackson's amended complaint will be dismissed with prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

3 June 2016